[No. B150425. Second Dist., Div. Seven. Sept. 17, 2002.]

ROBIN L. HANNA, Plaintiff and Respondent, v.
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT et al., Defendants
and Appellants.

**COUNSEL**

Law Offices of Hausman & Sosa, Jeffrey M. Hausman and Larry D. Stratton for Defendants and Appellants.

Green & Shinee and Helen L. Schwab for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—The Los Angeles County Employees Retirement Association, Board of Retirement (the Retirement Board) denied Robin L. Hanna's application for disability retirement. Thereafter, Hanna filed a writ petition against her employer, the Los Angeles County Sheriff's Department, seeking reinstatement to paid status as a deputy sheriff. The trial court granted the petition.

The sheriff's department contends it does not have a duty under Government Code section 31725[1] to reinstate Hanna to paid status as a deputy sheriff because (1) the department did not "dismiss" her from employment, but offered to place her in another position consistent with the work restriction set forth in her workers' compensation award and (2) the department filed its own application seeking disability retirement for Hanna, which is still pending before the Retirement Board. The department also contends Hanna's petition is barred by judicial estoppel based on the inconsistent position Hanna asserted in her workers' compensation case (i.e., she was permanently disabled and could not return to work as a deputy sheriff).

We conclude, once the Retirement Board's decision denying Hanna's application for disability retirement became final, section 31725 required the sheriff's department to reinstate Hanna to paid status as a deputy sheriff. Accordingly, we affirm the judgment.

FACTS AND PROCEEDINGS BELOW

In 1986, Robin Hanna began her employment with the Los Angeles County Sheriff's Department (the Department). In or about August 1996, she

---

[1]All further statutory references are to the Government Code.

went on medical leave, claiming she had sustained stress-related injuries as a result of on-the-job harassment. She filed a workers' compensation claim.[2] In July 1999, Hanna received an award from the Workers' Compensation Appeals Board, which contained a work restriction stating Hanna was "precluded from stressful employment and could no longer be a police officer."

Hanna requested the Department to reinstate her as a deputy sheriff. The Department refused based on the work restriction in the workers' compensation case. Hanna, therefore, submitted to the Retirement Board an application for service-connected disability retirement.

In March 2000, the Department sent Hanna a letter acknowledging her application for disability retirement and requesting she fill out an "Employment Option Preference" form. The form asks the employee whether she would like to (1) "return to the Sheriff's Department in a non-Sworn capacity"; (2) "seek employment in another unit within the Sheriff's Department"; and/or (3) "explore employment in another County Department." Apparently Hanna did not respond.

On April 5, 2000, the Retirement Board denied Hanna's application for disability retirement, finding she "did not meet the burden of proof required for disability retirement." On April 21, the Retirement Board sent a letter to Hanna and the Department notifying them of the decision and their right to appeal it within 30 days. In compliance with the Retirement Board's appeal procedure, Hanna requested a hearing before a board-appointed referee.

On May 17, 2000, Hanna demanded the Department return her "to her usual and customary job at another station." The Department refused to reinstate Hanna because of her work restriction. On or about May 24, Hanna filed a petition to reopen her workers' compensation case. Hanna told the Department she filed the petition "so that the work restrictions might be changed." The petition itself, however, requests the case "be reopened alleging new and further disability."

In July 2000, Hanna made another request for reinstatement. The Department responded, stating the Retirement Board's decision denying her disability application was not final because Hanna had filed an appeal. On August 11, Hanna sent a letter to the Retirement Board withdrawing her request for a hearing before a board-appointed referee. On September 1, she

---

[2]In July 1997, Hanna also filed a sexual harassment action against the County of Los Angeles, the Department and one of her supervisors. A jury returned a verdict in favor of the defendants.

sent a letter to the Department notifying it she had withdrawn her appeal and demanding reinstatement.

On September 5, 2000, the Department sent a letter to the Retirement Board requesting it delay a decision on Hanna's request to withdraw her appeal until the board's October meeting. The Department informed the Retirement Board it might file a separate disability retirement application on Hanna's behalf. Hanna objected to the Department's request for a continuance.

On October 3, 200, the Department sent a letter to Hanna, again requesting she fill out and return the Employment Option Preference form. On or about the same day, the Department filed an application on Hanna's behalf for involuntary (non-service-connected) disability retirement, which the Department subsequently amended. The first amended application states there is no position Hanna "would be able to perform with the County that would not result in a loss of income to [Hanna]." The application also states Hanna cannot work "in the stressful environment of a peace officer" or engage "in duties including, but not limited to (1) carrying a firearm, and (2) testifying in court."

On October 4, 2000, the Retirement Board "approved the dismissal of [Hanna's] appeal with prejudice for a service-connected disability retirement." On October 11, the Retirement Board notified Hanna and the Department of its decision. The Department did not seek judicial review of the Retirement Board's decision denying Hanna's disability application.

In January 2001, Hanna filed a petition for peremptory writ of mandate against the Department, Leroy D. Baca (Sheriff of the County of Los Angeles) and the County of Los Angeles (collectively the Department). She sought reinstatement to full duty as a deputy sheriff and backpay and benefits. The Department opposed the petition, arguing the court does not have jurisdiction over this matter because the Department's disability application is pending before the Retirement Board. The trial court granted the petition, concluding the Department has a mandatory duty under Government Code section 31725 to reinstate Hanna to paid status as a deputy sheriff, "effective the day following the date of her dismissal which occurred no earlier than August 11, 2000."

DISCUSSION

I. *Section 31725 Requires the Department to Reinstate Hanna to Paid Status as a Deputy Sheriff.*

Government Code section 31725 provides: "Permanent incapacity for the performance of duty shall in all cases be determined by the board. [¶] If the

medical examination and other available information do not show to the satisfaction of the board that the member is incapacitated physically or mentally for the performance of his duties in the service and the member's application is denied on this ground the board shall give notice of such denial to the employer. The employer may obtain judicial review of such action of the board by filing a petition for a writ of mandate in accordance with the Code of Civil Procedure or by joining or intervening in such action filed by the member within 30 days of the mailing of such notice. If such petition is not filed or the court enters judgment denying the writ, whether on the petition of the employer or the member, and the employer has dismissed the member for disability the employer shall reinstate the member to his employment effective as of the day following the effective date of the dismissal."

■ The Department contends section 31725 does not apply here because it did not "dismiss" Hanna from her employment. The Department claims it offered to place Hanna in another position "consistent with" her work restriction, but Hanna "refused to cooperate." On appeal, the Department asserts it never represented it would reduce Hanna's pay. In its disability application, however, the Department stated it had no position consistent with the work restriction which would afford Hanna the same pay she received as a deputy sheriff. Hanna responds, arguing the Department "dismissed" her within the meaning of section 31725 when it refused to restore her to full salary as a deputy sheriff. Based on the plain language of section 31725, and the case law discussed below, we conclude the Department had a mandatory duty to reinstate Hanna to paid status as a deputy sheriff once the Retirement Board's decision denying her application for disability retirement became final.

In *Phillips v. County of Fresno*, a deputy sheriff on unpaid medical leave applied for service-connected disability retirement after he sustained physical and psychological injuries during three separate incidents: He killed a man during a shootout, injured his neck performing a training exercise and injured his knee when a car hit him while he was on duty.[3] The county retirement board denied his application for disability retirement, concluding the deputy "had greatly exaggerated his physical and emotional problems and was 'not substantially incapacitated from the performance of his usual job duties, either from a physical or psychiatric standpoint.' "[4] Neither the deputy nor his employer, the County of Fresno, sought judicial review of the decision. The deputy requested reinstatement to active duty. The county

[3]*Phillips v. County of Fresno* (1990) 225 Cal.App.3d 1240, 1244-1245 [277 Cal.Rptr. 531].
[4]*Phillips v. County of Fresno, supra,* 225 Cal.App.3d at page 1245.

refused to reinstate him for nearly three years until a new sheriff took office. The deputy remained on unpaid leave during that time. The deputy filed a petition for writ of mandate seeking reinstatement "to a position of deputy sheriff retroactively 'as of the date [he] was relieved of his duties and status as a paid employee . . . .' "[5] The trial court granted the petition.

On appeal, the county argued reinstatement under section 31725 is not mandatory where an employee voluntarily places himself on medical leave of absence. The Court of Appeal disagreed, concluding "availability of the remedy provided by section 31725 does not depend upon whether the employee has been forced by the employer to cease work because of a disability or has voluntarily stopped working for that reason."[6] The county also argued section 31725 is not applicable where an employee is not ready, willing or able to return to work. Again the Court of Appeal disagreed, stating: "Logically, a disability which led an employee to apply for disability retirement in the first instance will not instantly disappear upon a retirement board's finding the employee is not incapacitated from performing the duties of the job in question. There is no language in section 31725 which limits its application to those employees who are ready and willing to return to work or which conditions reinstatement upon the employer's finding the employee capable of performing the job."[7]

The Court of Appeal affirmed the trial court's decision, concluding, "If the employer and Retirement Board do not agree that the employee is entitled to disability retirement, the employer's recourse is to seek judicial review of the Retirement Board's decision. If judicial review is not pursued, the employee must be reinstated."[8] The appellate court "recognize[d] the sheriff has the ultimate authority and responsibility to determine whether a deputy is fit to engage in active duty. Clearly a person who suffers from a physical, emotional or mental disability should not be forced to perform the strenuous and dangerous duties of a deputy sheriff. Section 31725 does not mandate reinstatement to active duty status. The language and legislative intent reflect the purpose of the statute is to mandate reinstatement to paid status."[9]

Similarly, in *Raygoza v. County of Los Angeles*, a deputy marshal employed by the County of Los Angeles applied for workers' compensation

---

[5] *Phillips v. County of Fresno, supra,* 225 Cal.App.3d at page 1247.
[6] *Phillips v. County of Fresno, supra,* 225 Cal.App.3d at page 1256.
[7] *Phillips v. County of Fresno, supra,* 225 Cal.App.3d at page 1256.
[8] *Phillips v. County of Fresno, supra,* 225 Cal.App.3d at page 1258.
[9] *Phillips v. County of Fresno, supra,* 225 Cal.App.3d at page 1257.

benefits alleging he sustained an "injury to his psyche" during a shootout.[10] The deputy received a workers' compensation award containing a work restriction which " 'precluded [him] from situations where he may have to use a weapon.' "[11] The Marshal of the Municipal Courts of Los Angeles County fired the deputy after the marshal determined the deputy could not return to his former position, and the marshal had no permanent light-duty positions. The marshal applied for disability retirement on the deputy's behalf. At an administrative hearing on the application, the deputy said he could handle a gun and the job of deputy marshal. The Retirement Board denied the marshal's application. The deputy filed a petition for writ of mandate after the marshal refused to reinstate him as a deputy marshal.[12] The trial court denied the deputy's petition, finding "all jobs in the department require the carrying of a firearm. The only exception is the temporary duty of dealing with prisoners. To reinstate [the deputy] without a firearm is to pay him a full salary to do nothing."[13]

The Court of Appeal reversed the trial court's decision, concluding, "[A]ll the requirements of section 31725 were met and [the deputy] must be reinstated."[14] The appellate court explained the deputy "is either fit or not. If he is, the marshal faces the uncomfortable prospect of putting an armed man on duty who once suffered a psychic injury connected to firearms. If [the deputy] is unfit, he should be retired. But the retirement board has already eliminated that prospect. The result is that, whether [the deputy] is truly fit or not, he is deemed fit, leaving the marshal the unpalatable chore of putting back on the payroll one he no doubt considers a liability and a danger."[15] The court "appreciate[d] the dilemma in which the marshal finds himself. But the statute is plain on its face and makes no exception for a situation where the employer claims to have no job available in light of a workers' compensation restriction."[16] The court concluded, "The Legislature's intent is plain. [The deputy] cannot be denied both work and disability retirement. If there is a hole in the statutory scheme, the county has to go to the Legislature for a patch."[17]

In this case, the Retirement Board denied Hanna's application for disability retirement and the Department did not request a hearing by a board-appointed referee or seek judicial review of the decision. Based on these

---

[10]*Raygoza v. County of Los Angeles* (1993) 17 Cal.App.4th 1240, 1242 [21 Cal.Rptr.2d 896].

[11]*Raygoza v. County of Los Angeles, supra,* 17 Cal.App.4th at page 1242.

[12]*Raygoza v. County of Los Angeles, supra,* 17 Cal.App.4th at pages 1242-1243.

[13]*Raygoza v. County of Los Angeles, supra,* 17 Cal.App.4th at pages 1243-1244.

[14]*Raygoza v. County of Los Angeles, supra,* 17 Cal.App.4th at page 1245.

[15]*Raygoza v. County of Los Angeles, supra,* 17 Cal.App.4th at page 1246.

[16]*Raygoza v. County of Los Angeles, supra,* 17 Cal.App.4th at page 1245.

[17]*Raygoza v. County of Los Angeles, supra,* 17 Cal.App.4th at page 1247.

facts, section 31725 mandates the Department reinstate Hanna to paid status as a deputy sheriff regardless of the work restriction. The Department may refuse to allow Hanna to perform some of the duties of a deputy sheriff, but it must pay her as a deputy sheriff.

The Department argues this case is distinguishable from *Phillips* and *Raygoza* because the Department filed a separate disability application on Hanna's behalf, which is currently pending before the Retirement Board. The Department claims it did not join in Hanna's application or seek judicial review of the Retirement Board's decision because (1) Hanna's application was based on the false premise her disability is service-connected (caused by on-the-job harassment) and (2) the Department did not have access to the administrative record. The Department contends section 31725 does not require it to reinstate Hanna while the Department's application is pending. The Department cites no authority for this proposition.

We agree with the Department's assertion it filed its application "on Hanna's behalf."[18] We disagree that fact has some bearing on the outcome of this case. The Department's application is separate from Hanna's application even though the Department filed it before the Retirement Board approved the dismissal of Hanna's appeal.

As the Department correctly points out, under section 31725, the Retirement Board is the only entity charged with determining "[p]ermanent incapacity for the performance of duty." When the Retirement Board determined Hanna did not meet the burden of proof required for disability retirement, and that decision became final, the mandatory duty under section 31725 was triggered.

The Department argues the position we take in this case will lead to "absurd results" and will preclude the Department from pursuing its own disability application based on "true" facts. This is not so. Nothing in our opinion prevents the Department from pursuing its own application on Hanna's behalf. If the Retirement Board grants the Department's application,

---

[18]Under Government Code section 31721, subdivision (a), "[a] member may be retired for disability *upon the application of* the member, *the head of the office or department in which he is or was last employed*, the board or its agents, or any other person on his behalf, except that an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any eligible member believed to be disabled, unless the member waives the right to retire for disability and elects to withdraw contributions or to permit contributions to remain in the fund with rights to service retirement . . . ." (Italics added.)

Hanna will be retired. But until the Retirement Board renders its decision, Hanna should not sit in limbo without either a disability retirement or full pay as a deputy sheriff. As the trial court noted, if we were to adopt the Department's position, the Department could keep Hanna in limbo indefinitely by filing successive applications with the Retirement Board citing "changed circumstances." That is the "absurd result" the plain language of section 31725 prevents.

The trial court properly granted Hanna's writ petition and ordered the Department to reinstate Hanna to paid status as a deputy sheriff.

## II. *The Doctrine of Judicial Estoppel Is Not Applicable in This Case.*

 The Department contends this action is barred by the doctrine of judicial estoppel because the position Hanna asserted in the workers' compensation case "completely conflicts with the position she takes in the present mandate action." Hanna responds, arguing application of the doctrine in this context "would void the provisions of [section] 31725."

 " 'Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. The doctrine serves a clear purpose: to protect the integrity of the judicial process.' . . ."[19] It is " ' " " 'intended to protect against a litigant playing "fast and loose with the courts. . . ." ' " ' " "[20]

In *Jackson v. County of Los Angeles*, the Court of Appeal concluded judicial estoppel "should apply when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake."[21]

 The Department likens this case to *Jackson*. There, a safety police officer employed by the County of Los Angeles filed a workers'

---

[19]*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 [70 Cal.Rptr.2d 96], citation omitted.

[20]*Jackson v. County of Los Angeles, supra,* 60 Cal.App.4th at page 181, citation omitted.

[21]*Jackson v. County of Los Angeles, supra,* 60 Cal.App.4th at page 183.

compensation claim alleging he sustained injuries to his back, shoulder and psyche "while restraining a hyperactive patient" who was under the influence of the drug PCP.[22] The employee "continued to perform his job without the need for any accommodation" until he received a workers' compensation award containing "a work restriction mandating that [his] employment be free from emotional stress and strain."[23] After the county determined it had no safety police officer positions which were free from emotional stress, the county placed the employee on medical leave. The employee filed a civil action alleging the county violated the Americans with Disabilities Act (the ADA) when it failed to accommodate his disability and terminated his employment. He alleged "the County had treated him as if he had a disability when in fact he did not."[24]

The Court of Appeal affirmed the trial court's decision granting the county's summary judgment motion based on judicial estoppel. The appellate court found, to prevail on his ADA claim, the employee would have to prove "he could perform the essential functions of the job he held or desired, with or without reasonable accommodation."[25] The court concluded, "To make such a showing, [the employee] would have to assert a position in this action that is totally inconsistent with the position he successfully pursued in the workers' compensation proceeding. The doctrine of judicial estoppel forecloses that attempt."[26]

We agree with Hanna judicial estoppel is not applicable in the context of this case because Hanna is not asserting inconsistent positions in an attempt to play fast and loose with the courts. Hanna asserted consistent positions in her workers' compensation case and her disability application. Although the Workers' Compensation Appeals Board issued an award with a work restriction, the Retirement Board denied Hanna a disability retirement. Hanna now has no job and no disability retirement. In this situation, the law expressly allows her to seek reinstatement to paid status in her former position. Hanna is doing what the appellate courts of this state have held she may (and should) do.

---

[22]*Jackson v. County of Los Angeles, supra,* 60 Cal.App.4th at pages 175-176.
[23]*Jackson v. County of Los Angeles, supra,* 60 Cal.App.4th at page 175.
[24]*Jackson v. County of Los Angeles, supra,* 60 Cal.App.4th at page 177.
[25]*Jackson v. County of Los Angeles, supra,* 60 Cal.App.4th at page 189.
[26]*Jackson v. County of Los Angeles, supra,* 60 Cal.App.4th at page 189; see also *Drain v. Betz Laboratories, Inc.* (1999) 69 Cal.App.4th 950, 960 [81 Cal.Rptr.2d 864] (wrongful termination action barred by judicial estoppel where employee "sought and obtained recovery [in his workers' compensation case] based on total inability to perform any of his job functions or any other occupation").

## DISPOSITION

The judgment is affirmed. Respondent is to recover her costs on appeal.

Lillie, P. J., and Woods, J., concurred.